SO ORDERED.

SIGNED this 30 day of September, 2015.

_David M. Warren_
**David M. Warren**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                  CASE NO. 10-09744-8-DMW

**MICHAEL FRANK WHITEHEAD, SR.,**          CHAPTER 7
 **DEBTOR**

---

**MICHAEL FRANK WHITEHEAD, SR.,**
 **PLAINTIFF**

**vs.**                                                          **ADVERSARY PROCEEDING NO.**
                                                                **14-00103-8-DMW**

**BENNIE S. WALLACE and**
**KRISTEN WALLACE**
 **DEFENDANTS**

### MEMORANDUM OPINION
### REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

 This matter comes on to be heard upon the Plaintiff's Motion for Summary Judgment

("Summary Judgment Motion") filed by Michael Frank Whitehead, Sr. ("Plaintiff") and the

Defendants' Cross Motion for Summary Judgment ("Cross Summary Judgment Motion") filed by

Bennie S. Wallace and Kristen Wallace ("Defendants"). The court conducted a hearing in Raleigh,

North Carolina on June 30, 2015. Jason L. Hendren, Esq. appeared for the Plaintiff and Edward

H. Maginnis, Esq. appeared for the Defendants.  Summary judgment is granted to the Plaintiff and denied as to the Defendants. Based upon the arguments of counsel and memoranda of law submitted by the parties, the court makes the following findings of fact and conclusions of law:

1.    This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.    The Plaintiff is the president and sole shareholder of MacGregor Development Company ("MacGregor").  MacGregor developed residential neighborhoods, with each individual neighborhood being associated with a particular North Carolina limited liability company that was fully owned and operated by MacGregor ("MacGregor LLCs").  One of the MacGregor LLCs was South Forty Ventures, LLC ("South Forty").[1]

3.    On November 14, 2008, MacGregor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  The Defendants were not listed as creditors on MacGregor's Schedules, and the Defendants did not file a claim in that case.  MacGregor operated as a debtor-in-possession under 11 U.S.C. § 1107 until confirmation of a plan of reorganization on August 14, 2009.  The court entered a Final Decree on May 9, 2013.

4.    On September 23, 2009, the Defendants filed a Complaint in Wake County Superior Court ("State Court") against South Forty, alleging causes of action arising out of the Defendants' purchase of real property from South Forty ("State Court Action").  Specifically, the Defendants alleged that South Forty sold them real property without disclosing South Forty's failure to comply with erosion control ordinances imposed by the Town of Holly Springs.  The

---

[1] The twice-removed relationship between the Plaintiff and South Forty will be highlighted later in this opinion.

Defendants asserted that South Forty violated North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*

5.      On October 30, 2009, the Defendants obtained an Entry of Default against South Forty in the State Court Action, and on March 12, 2010, the State Court entered summary judgment against South Forty.  At the time of the entry of the judgment, the Plaintiff was not and had not been a party to the State Court Action.

6.      The Defendants were unable to collect on their judgment against South Forty, and on August 13, 2010, South Forty was administratively dissolved by the North Carolina Secretary of State.  Apparently, after a MacGregor LLC completed its development project, the annual report would not be filed with the Secretary of State, resulting in that particular MacGregor LLC eventually being administratively dissolved.

7.      On November 24, 2010, the Plaintiff filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, and creditors in the case were served with a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines that set February 22, 2011 ("Bar Date") as the deadline for filing objections to discharge or dischargeability.  The Defendants were not scheduled as creditors in the case and, therefore, did not receive this Notice.

8.      On October 24, 2011, the Plaintiff received a discharge under 11 U.S.C. § 727.  On January 17, 2012, the court entered a Final Decree, and the Plaintiff's bankruptcy case was closed.

9.      On January 22, 2013 and *after* the State Court entered summary judgment against South Forty, the Defendants filed a First Amended Complaint ("Amended Complaint") in the State Court Action to add the Plaintiff and MacGregor as defendants.[2]  The Amended Complaint alleges

---

[2] There is no indication that the Defendants obtained relief from the automatic stay in MacGregor's bankruptcy or relief from the discharge injunction in the Plaintiff's bankruptcy to add MacGregor and the Plaintiff to the State Court Action.  Without that permission, many courts, including this one, have held that those acts are void and of no effect.  Addressing this issue is not necessary because of the result reached on other grounds.

claims of negligence *per se*, fraudulent concealment of a material fact, fraudulent misrepresentation, fraud, unfair and deceptive trade practices, and breach of warranty against encumbrances ("Claims").  On June 6, 2013, the Plaintiff filed an Answer in the State Court Action and raised an affirmative defense that any alleged liability to the Defendants was discharged pursuant to 11 U.S.C. § 727.

10.    On March 25, 2014, the Plaintiff filed a Debtor's Motion to Reopen Case and Debtor's Motion for Award of Sanctions, Damages, and Attorneys' Fees for Violation of the Discharge Injunction ("Sanctions Motion").  On March 27, 2014, the court reopened the Plaintiff's case.

11.    In the Sanctions Motion, the Plaintiff requested the court to impose sanctions against the Defendants for filing the Amended Complaint in the State Court Action in alleged violation of the discharge injunction imposed by 11 U.S.C. § 524(a) and to direct the Defendants to dismiss the State Court Action.  On April 8, 2014, the Defendants filed a Response to the Sanctions Motion and asserted that the Claims were excepted from discharge pursuant to 11 U.S.C. § 523(a)(3)(B), because (1) they are of a kind specified in 11 U.S.C. § 523(a)(2), (4), or (6);[3] (2) the Plaintiff intentionally did not schedule the Defendants as known creditors in the case; and (3) the Defendants were unaware of the Plaintiff's bankruptcy prior to the Bar Date.  The Defendants further contended that because the Plaintiff had already filed an Answer in the State Court Action, the issue of dischargeability should be decided by the State Court.

12.    On June 2, 2014, the Plaintiff initiated this Adversary Proceeding by filing a Complaint against the Defendants.  The Plaintiff seeks a declaration that the Claims, as set forth in the State Court Action, were discharged pursuant to 11 U.S.C. § 727.

---

[3] These causes of action deal with alleged fraud, embezzlement and malicious injury.

4

13.     On June 19, 2014, the court conducted a hearing on the Sanctions Motion, at which time the Plaintiff withdrew his request for sanctions, and the parties and the court agreed that the real issue to be determined was whether this court or the State Court has jurisdiction to determine the dischargeability of the Claims.  The court took the matter under advisement, and on September 30, 2014, the court entered a Memorandum Opinion and Order Regarding Section 523(a) and Jurisdiction ("Opinion").  In the Opinion, the court analyzed 11 U.S.C. § 523 and concluded that the issue to be litigated in this Adversary Proceeding is whether the Claims are excepted from discharge pursuant to 11 U.S.C. § 523(a)(3).  The most significant factor is whether the Plaintiff knew, or should have known, that the Defendants would have a claim against him.  If the Claims are discharged, then the court has exclusive jurisdiction to rule that the discharge injunction imposed by 11 U.S.C. § 524(a) prevents the Defendants from seeking judgment against the Plaintiff in the State Court Action.  If the Claims are not discharged because 11 U.S.C. § 523(a)(3)(B) applies, then this court and the State Court have concurrent jurisdiction to litigate the Claims. *See* 28 U.S.C. § 1334(b).

14.     Based on the Opinion, the Plaintiff and the Defendants proceeded with the Adversary Proceeding and filed their respective summary judgment motions which the court will now address.

15.     <u>Standard of Review</u>.

a.     Rule 56 of the Federal Rules of Civil Procedure, incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

b.    "[S]ummary judgement is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c) (1963) (amended 2010)).

c.    When considering a motion for summary judgment, "the court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant . . . ." *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624 (4th Cir. 1999) (citations omitted).

d.    "The fact that both sides moved for summary judgment does not establish that there is no issue of fact and require that judgment be granted for one side or the other." *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965).

16.    Exceptions to Discharge.  As more fully explained in the Opinion, Section 523(a) lists 19 types of debt that are excepted from an individual debtor's discharge.  With respect to all but three of these exceptions, "neither the Bankruptcy Code nor the Bankruptcy Rules require [sic] that either the debtor or the creditor raise the question of nondischargeability within any given time period nor do they require that those grounds be raised before the bankruptcy court at all."  *In re Walker*, 195 B.R. 187, 195 (Bankr. D.N.H. 1996).  Claims based upon fraud, embezzlement, and malicious injury, as set forth in 11 U.S.C. § 523(a)(2), (4), and (6), respectively, must be raised in

the bankruptcy court.  At least a portion of the Claims against the Plaintiff, while unlitigated, appear to fall within one or more of these exceptions to discharge.[4]

17.    <u>Time Requirements and Exceptions</u>.

a.    Rule 4007(c) of the Federal Rules of Bankruptcy Procedure establishes a deadline of 60 days after the first date set for the meeting of creditors for objecting to dischargeability of a debt of the kind listed in § 523(a)(2), (4) or (6). Fed. R. Bankr. P. 4007(c); *see* 11 U.S.C. § 523(c).  In the Plaintiff's bankruptcy case, this deadline was the Bar Date of February 22, 2011.

b.    If a creditor does not timely object to the discharge of a debt of the kind listed in § 523(a)(2), (4) or (6), then that debt is discharged, "[e]xcept as provided in [11 U.S.C. § 523(a)(3)(B)]." 11 U.S.C. § 523(c)(1).

c.    Section 523(a)(3) excepts from discharge a debt:

neither listed nor scheduled under section 521(a)(1) of this title, with the name, ***if known to the debtor***, of the creditor to whom such debt is owed, in time to permit–
. . . .
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, . . . timely request for a determination of dischargeability of such debt under one of such paragraphs, ***unless such creditor had notice or actual knowledge*** of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3) (emphases added).  If 11 U.S.C. § 523(a)(3)(B) applies, then the deadline imposed by Rule 4007(c) and the exclusive jurisdiction Rule 4007(c) confers upon the bankruptcy court do not apply.

---

[4] The court explained in the Opinion that "[t]o the extent that the Amended Complaint contains causes of action under any . . . provision of Section 523(a) [other than § 523(a)(2), (4) or (6)] or causes of action which are not listed in Section 523(a), those debts were discharged in the [Plaintiff]'s 'no asset' case, regardless of whether the [Defendants] had notice of the [Plaintiff]'s case." (footnote omitted) (citing *In re Toussaint*, 259 B.R. 96, 103 (Bankr. E.D.N.C. 2000)).

d.      There is no dispute that the Plaintiff failed to schedule the Defendants as creditors in the bankruptcy case.  Following, any of the Defendants' Claims that are of the type listed in 11 U.S.C. § 523(a)(2), (4) or (6) are excepted from the Plaintiff's discharge if the Plaintiff knew of the Defendants' Claims against him, and the Defendants were unaware of the Plaintiff's bankruptcy proceeding prior to the Bar Date.  The Plaintiff concedes that the Defendants were probably not aware of his bankruptcy case prior to the Bar Date; therefore, this court must decide whether it can conclude as a matter of law that the Defendants were known creditors that should have been scheduled by the Plaintiff pursuant to 11 U.S.C. § 521(a)(1).

18.     Position of Parties.

a.      The Plaintiff contends that there was no reason for him to consider himself potentially indebted to the Defendants and name them as creditors in his bankruptcy schedules.  The Plaintiff filed his bankruptcy petition over eight months after judgment was entered against South Forty in the State Court Action.  During that time period, neither the Defendants nor their counsel made any demand upon the Plaintiff or suggested that they believed he might be liable for the Claims or the judgment against South Forty.  In fact, the Defendants admit that they did not at that time believe the Plaintiff would be liable.

b.      The Defendants assert that because the Plaintiff had been previously added as a defendant in an unrelated action against MacGregor on a veil-piercing theory, the Plaintiff should have assumed he was potentially liable to any creditor of MacGregor or of a MacGregor LLC.

19.    <u>Business Organizations and Governance</u>.

a.    In North Carolina, "[t]he general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders." *Green v. Freeman*, 749 S.E.2d 262, 270 (N.C. 2013) (quoting *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 666 S.E.2d 107, 112 (N.C. 2008)).  The North Carolina Limited Liability Company Act combines "the limited liability of a corporation and the more simplified taxation model of a partnership." *Hamby v. Profile Prods., L.L.C.*, 652 S.E.2d 231, 235 (N.C. 2007) (citation omitted).  "[L]imited liability of [an LLC's] owners, often referred to as 'members,' is a crucial characteristic of the LLC form, giving members the same limited liability as corporate shareholders." *Id.* (citation omitted).  Piercing the corporate veil, or allowing injured parties to bring claims against individuals who would otherwise be shielded by the corporate (or company) form, "is not to be done lightly." *Green*, 749 S.E.2d at 270.  The Defendants reference numerous state court lawsuits brought against MacGregor and/or a MacGregor LLC; however, in only one of these mentioned lawsuits, filed against Crooked Creek Residential Properties, LLC ("Crooked Creek Action"), was the Plaintiff added as a defendant based upon a veil-piercing theory.  The Crooked Creek Action was resolved before any adjudication by the state court on the merits of the veil-piercing theory.

b.    After the Crooked Creek Action, the Defendants assert that the Plaintiff made the strategic decision to allow all subsequent actions against a MacGregor LLC, including the State Court Action against South Forty, to proceed to judgment by default,[5] because he knew that if discovery were conducted, then there was a possibility that he

---

[5] In the State Court Action, even though the Defendants obtained an Entry of Default, they chose to seek summary judgment rather than a default judgment against South Forty. This election is irrelevant to the court's analysis.

could be added as an individual defendant on a veil-piercing claim.  Without condoning this alleged strategy, the court notes that the Plaintiff was not again added as a defendant in any other action against a MacGregor LLC prior to his bankruptcy proceeding. However, it remains unknown as to whether this is actually a result of this alleged procedural strategy or simply because veil-piercing in North Carolina is an extreme remedy and was perhaps not a viable option in the other matters.  Finding liability of the Plaintiff in an action against a MacGregor LLC would require a court to disregard the corporate form of both the MacGregor LLC and MacGregor, necessitating a double-piercing of the veil.

20.   <u>Knowledge of Claim</u>.

a.   The Defendants correctly point out that the Bankruptcy Code's definition of "claim" is extremely broad, and the court will agree that under 11 U.S.C. § 105(5)(A), the Defendants held a claim against the Plaintiff and were thus "creditors" pursuant to 11 U.S.C. § 105(10)(A).  However, the court is not convinced that the Defendants were creditors known to the Plaintiff for purposes of 11 U.S.C. § 523(a)(3).  Relying on the case of *Mitchell v. Bigelow (In re Mitchell)*, 418 B.R. 282 (B.A.P. 8th Cir. 2009), the Defendants assert that the Plaintiff should have listed them as creditors in the case, because the Plaintiff knew all the facts giving rise to the Defendants' claim and knew the Defendants' identity. While the Plaintiff may have had this knowledge, the present case is distinguishable from *Mitchell*, because unlike the debtor in that case, the Plaintiff did not directly injure the Defendants.  Instead, the Plaintiff's knowledge of the Defendants' Claims was derived from the State Court Action against South Forty, a matter which had been fully adjudicated prior to the Plaintiff filing his bankruptcy petition.  As mentioned earlier, the Plaintiff was

not a party to the State Court Action when the Plaintiff filed his bankruptcy case. With the State Court Action over, it is reasonable to conclude that the Plaintiff did not know the Defendants had a claim against him, and in fact, the Defendants themselves admit that they did not know they had a claim. *See Muir v. McWilliams,* 517 B.R. 132, 139 (S.D. Ind. 2014) (holding that the discharge exception for debts that are not listed or scheduled would not apply to a claim that was not known to debtors until after they received their discharge); *Aetna Cas. & Sur. Co. of Ill. v. Wilson (In re Wilson)*, 200 B.R. 72, 74 (Bankr. M.D. Fla. 1996) (finding that Chapter 7 debtor "had no basis to assume or even to suspect that" plaintiff would bring charges against the debtor, even though the plaintiff took his statement under oath during proceedings leading up to two lawsuits against the debtor's company).

b.      The court recognizes that the Plaintiff is a savvy businessman and was knowledgeable about corporate veil-piercing; however, the court questions whether this knowledge requires the Plaintiff to assume that he is potentially indebted perpetually to any person or entity that has a claim against either MacGregor or one of the MacGregor LLCs.  In this case, the court is especially troubled by the fact that judgment was entered against South Forty and the State Court Action effectively closed almost nine months prior to the Plaintiff's bankruptcy petition.  Even if the Plaintiff considered he might have veil-piercing exposure at the time the State Court Action was commenced against South Forty, certainly he cannot be expected to believe that potential liability continued after judgment was entered in the State Court Action and many months passed without the Defendants making any sort of demand against him. *See Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 655 (M.D. Fla. 1991) (holding that debtor is not required

11

to give actual notice of claims bar date when the debtor could reasonably have believed that the creditor had abandoned its claim against the debtor); *see also In re Chicago, Rock Island & Pacific R.R. Co.*, 788 F.2d 1280, 1283 (7th Cir. 1986) (noting that a trustee has no duty to give notice of debtor's impending discharge to creditors who he reasonably believes have abandoned their claims).

c.       The relationship between the Plaintiff and South Forty is more removed than what may normally be considered in a veil-piercing scenario.  The Plaintiff was the sole shareholder of MacGregor, and MacGregor was the sole member of South Forty.  To reach the Plaintiff, the Defendants would have to achieve a double-piercing of the corporate (or company) veil.  Having this extra layer of protection further supports the Plaintiff believing he was not personally liable to the Defendants for any alleged harm caused by South Forty.

d.       The Plaintiff contends that with his layman's knowledge of civil procedure, he did not contemplate that he could still be added as a defendant in the State Court Action after entry of a judgment in the matter.  In the Opinion, this court expressed doubt over whether the Amended Complaint was procedurally proper.  Rule 15(a) of the North Carolina Rules of Civil Procedure provides that:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, he may so amend it at any time within 30 days after it is served.  Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

N.C. Gen. Stat. § 1A-1, Rule 15(a) (1967).  Once a trial court enters final judgment in a case, the trial court lacks the authority to grant leave to amend under Rule 15, and summary

judgment is a final judgment if it disposes of all of a plaintiff's claims. *Sentry Enters., Inc. v. Canal Wood Corp. of Lumberton*, 380 S.E.2d 152, 155 (N.C. Ct. App. 1989) (citing *Bailey v. Gooding,* 270 S.E.2d 431, 433 (N.C. 1980); *Johnson v. Bollinger,* 356 S.E.2d 378, 382–83  (N.C. Ct. App. 1987)).  In *Sentry Enterprises*, the North Carolina Court of Appeals reversed a trial court's order granting a plaintiff leave to amend after the court entered summary judgment, holding that if this was allowed "Rule 15(a) would render Rule 56 meaningless and ineffective." *Sentry Enters.*, 380 S.E.2d at 155 (citing *Clardy v. Duke Univ.*, 299 F.2d 368, 370 (4th Cir. 1989)).  This case law confirms the court's suspicions regarding the validity of the Amended Complaint and supports a conclusion that at the time the Plaintiff filed his bankruptcy petition, he could not reasonably be expected to believe that the Defendants did, or would ever, assert a claim against him.

   e. Finally, the court cannot ignore the Defendants' credibility and motivation. If the Plaintiff were so involved in the sequence of events that led to the Defendants' damages, then the Defendants would have named the Plaintiff as a party defendant in the State Court Action in the initial complaint.  Obviously, the Plaintiff's actions, which the Defendants argue should lead to one of the most serious sanctions in the United States Bankruptcy Code,[6] were not so bad until the Defendants found out that South Forty did not have sufficient assets for their monetary recovery.  It was only then that the Defendants decided to pursue MacGregor and the Plaintiff.  By that time, it was too late. While it is unfortunate that the Defendants have suffered a significant loss, the time for finding other potential "deep pockets" has long passed.

---

[6]  In the court's opinion, only the denial or revocation of a discharge under 11 U.S.C. § 727 would be a more severe sanction than nondischargeability of a specific debt.

13

21.     For the reasons set forth in this Opinion, the court concludes that the Defendants were not known creditors to the Plaintiff at the time the Plaintiff filed his Chapter 7 petition; therefore, the Plaintiff's failure to schedule the Defendants as creditors did not result in the Claims becoming excepted from discharge pursuant to 11 U.S.C. § 523(a)(3)(B).  Accordingly, the Claims are discharged under 11 U.S.C. § 727.

22.     This Opinion constitutes the court's findings of facts and conclusions of law, and the court shall enter a separate order granting the Plaintiff's Summary Judgment Motion and denying the Defendants' Cross Summary Judgment Motion.

**END OF DOCUMENT**